case number 19-3081 United States of America versus Rashaun Parks also known as IV at balance. Mr. Smith for the at balance, Ms. Heffernan for the appellate. Mr. Smith, good morning. Good morning, Your Honor. Please proceed. Good morning, Your Honor. Jerry Smith for Rashaun Parks. I know this case on the one hand really all we're talking about here is what amounts to one year of supervised release. But I think the issue obviously is much larger. The real question is, here's how the court is to use the sentencing guidelines at sentencing. And and when when there should be a finding of prejudice when it incorrectly uses the guidelines, which unquestionably happened here. There's there's no question here that the court gave Mr. Parks and above guidelines term of And there's also no question that he did this, thinking that the term of supervised release that he did give was guidelines compliant, when in fact, it wasn't guidelines compliant. And he didn't he was never aware that the lower actual guideline range applied. Let me ask you, Mr. Smith, you said he did it knowing that it was an out of his statement, that regardless of whether the five year to life applies, what are you basing that on? What? What exactly did he say? Maybe I misspoke, Your Honor, he he thought the guideline range for the supervised release period was five to life. And I gave what he thought was a guidelines compliant. So kind of supervised release of six years. Of guideline provision for Mr. Parks term of supervised relief was exactly five years, no more, no less. So all the judge was authorized to give Mr. Parks for supervised release under the guidelines was five years, no more, no less, but he gave him six years thinking that that was guidelines compliant. Your Honor, that's my question is, what makes you what? Why did he? Why do you think he thought that? Because he also said, whether or not this is applicable, I'm giving you six years. That was in the that was in the pre sentence report, which he adopted. And he also explicitly said on the record that he thought the term of supervised release was five years to life. All right. So I think that there's two different things going on. Aren't there counsel? It's it's that the statute, he thought that the statute statutory provision was that he had to give at least five years, and he could give up to life. And, and that that was also the guidelines range. But it turns out that the statutory range did not have a bottom of five years, right? The statutory range has a bottom of is it one year? No, no, Your Honor, the God, the statutory range is five years to life, and we're not disputing that. So he could have legally given, given him up to life, and he could have legally come down all the way to five years. It's just that the guideline range was five years for a class C felony like this, usually the guideline range, I think is one to three years. But there's another guideline provision. I forget when 5d 1.2 that says when the the mandatory minimum, the statutory mandatory minimum is a such a number, the guidelines have to be at least that. And here the statutory mandatory minimum for supervised release was five years. So even though the guideline provision recommended a supervised release term of one to three years, that five year for trumped, and that means that the under the guidelines, the guideline range is wasn't even a range. It was a point was five years, no more, no less. That's what the guidelines called for. The statute permitted five years to life, and the so called for five years to life. And that's and thinking that he gave Mr Park six years thinking it was guidelines compliant. But really, the guidelines restricted him to five years, and he didn't know that. And that's really the problem here. He proceeded to sentencing, thinking that the guideline range for the supervised release was five to life when, in fact, it was only five years. Um, and I think that would have made a difference. In I mean, this is just a situation where the court uses an incorrect guideline range, not knowing he's doing that and is not even aware of the correct guideline range and ends up giving an above guideline sentence. And I think well, why couldn't Why couldn't we construe it to be his saying? Whatever? Whatever the range is, I'm going to vary from it. And we he could have done that. But we can't construe that because we don't know that he would have done that because he never considered the correct guideline range. He was never made aware of it. The Supreme Court has made clear that having the correct guideline range is, in fact, the fundamental building block of any sentence a court constructs, even if the court ends up deciding to give an above guideline sentence, he must still know the correct guideline sentence so that he can use that as a benchmark for gauging whatever variance he might apply. So the court could have varied from the five year range if he had chosen to do that. But to be even to be able to make that determination, he needed to know what that range was. And here he never knew what that range was. He never even knew that it might exist. And that's the problem. A court has to have the correct guideline range before it can before it can vary from anything. So here he never really was presented with a situation where he could vary from the guideline range for the simple fact he just never was made aware of what that guideline range was. And so how then how do we construe his saying, regardless of whether it's five years or not, I'm giving six? Well, because when he said that, he was talking about the defense counsel had asked him, defense counsel had made the argument that even under the statute, he could go lower than five years. And this is talking about the statute, not the guidelines. And the court in response to that said, well, counsel, even if I would still give you a guy six years. Um, that's just because, you know, for these reasons that I think he deserves six years, he's not on guideline reasons. Um, and that's where that comes in. I don't think that. But when he made that statement, he was still laboring under the misimpression that he could give Mr Parks under the guidelines up to life. Um, he very well may not have made that assertion. Had he known that the guidelines only permitted him to give Mr Parks five years supervised release. So I think when he made that statement, he may needs to be looked at in context. He made it laboring under the mistaken impression that he could, under the guidelines, give Mr Parks up to life when, in fact, the guidelines only permitted him to give him five years. If he had known that the guidelines only permitted him to give five years, and he said, Okay, well, I know that. Um, but I'm deciding to vary from the guidelines. Then it's fine. I wouldn't have any any argument here. But my primary position is he still needs to know what the correct guideline range is, even if he gives what turns out to be an above guideline sentence. Isn't isn't your argument tantamount to, um, saying that whenever the district court incorrectly calculates the guidelines, it's per se prejudicial and under Strickland. Isn't that essentially what you're arguing, even though that's not what the Supreme Court has said? Well, I think that is sort of what I'm arguing, Your Honor, and I do think it's what the Supreme Court said. The Supreme Court has said in Molina Martinez that, um, you know, when a defendant can show that a court used an incorrect guideline range of sentencing, I can quote the language if the court will bear with me just a quick second. The error itself can and most often will be sufficient to show a reasonable probability of a different outcome, i.e. prejudice. Um, and that's the base. That's the basis. And I think that's where we are. The court did say that there are unusual circumstances where that might not be the case, and the government feels that this is one of those unusual circumstances. Those on the court then went on to elaborate what those unusual circumstances would be. That would be those situations where you can, where the court made it clear that he would have given the same sentence even if he even if he had used the correct guideline range, and the government thinks this falls into one of those exceptions. But it doesn't. The Molina Martinez court was where, um, the court used an incorrect range, and because the incorrect range coincidentally overlap with the correct range, he ended up giving a guidelines compliance sentence, even though he was not using an incorrect range. So I guess in that situation, it's possible to say that even if the court had known what the correct guideline range was, he still might have given the same sentence because knowing the correct range wouldn't have given necessarily given him any reason for giving a lesser sentence since he never departed from the correct range to begin with. That's one situation where using an incorrect range wouldn't wouldn't necessarily be prejudiced. But it was there. No, Molina Martinez. It wasn't the court. The court, the court. Even the court there remanded the case for resentencing, even though because the judge had used an incorrect guideline range, um, and even though the sentence he did gave complied with the correct range, although that's what I'm saying. They did. They did. They said you got to go back for resentencing, even though it was compliant. Yeah, even though it was compliant with the correct range, they still said the fact that he used an incorrect range in and of itself was enough to remand the case for sentencing, even though the sentence was compliant with the correct range. So, Mr Smith, my question is about who decides there's something sort of hot about us speculating on what the district judge intended or was that he was going outside the range. You know, we we often typically, uh, remand for the district judge to decide whether there was an ineffective, whether there was ineffective assistance of counsel. And here I take it you're asking us to decide that. And, um, I mean, I have some sympathy for that because the district judges are swamped and gonna be more so when we're back in business. Uh, but why should we decide this? I think you can, if it's a clear cut issue, decide if it's ineffective is my understanding of the law. I know. Typically, like if it's a questionable issue, then it gets remanded. I don't think this is a, um, a questionable issue. I mean, the attorney forgot to inform the court of the correct guideline range. I think it's sort of a man. I'm not. I don't mean toe come down on the attorney. It's probably a mistake I've made at some are. But the attorney is the one the advocate for his client. He needs to make. I mean, he needs to check the guidelines and make sure that the court is aware of the correct guidelines. And the attorney here made an honest mistake. But he did make an honest. He did make a mistake on. I don't think there's any. I don't think there's any question that I mean, clearly, he did make that mistake. And I think clearly there's a reasonable probability that had he not made that mistake, the outcome would have been different. I term of supervised release when he believed that he could give him up to life. So I think there's definitely a reasonable probability that he would have only given him come down one year from what he did give if he had known that's all the guidelines had allowed him to do so. I think there's a reasonable probability. But for counsel's failure to point out the correct guideline range, the judge would have come to five years. And I take into consideration the fact that everybody missed this. I mean, it wasn't just that the judge was lulled into making a mistake by the Defense Council. As Judge Pillard pointed out, the probation officer missed it. The judge missed it. They all have an obligation to look at the guidelines and make sure they're being applied correctly. That's true, Your Honor. I guess. I mean, but I think it can be couched. And I mean, I think the defense attorney and I'm speaking as a defense attorney. I know we make mistakes, but I think the defense attorney has an obligation to do that. I mean, he can't pass the buck just because the probation officer and the judge didn't do it. That doesn't relieve him of his obligations to make sure that the guideline calculations are correct. And I know that other people made the But that's still squarely on his shoulders. That's why we have a defense council there to make sure that those kind of mistakes get corrected. Um, and I know nobody else noticed it, but it's I mean, it's not like I'm some rocket scientist and I noticed it just by looking at the guidelines. It's not that difficult a thing to notice. I can't explain why other people didn't notice it, but I mean, it's right there in the guidelines. It's it's a pretty obvious issue. Maybe maybe the trial judge was lulled, in which case, uh, I would feel uncomfortable saying we're changing the sentence to five years instead of sending it back to let him. I'm not asking you to change the sentence. I'm just asking you to remand the case for recent court can be made aware of what the got the correct guideline provision is. And then if the court decides to give six years now that he's been properly informed, so be it. We have to live with it. I'm just asking you to remand the case for resentencing. All right. I misunderstood Judge Pillard's question. Okay. Any more questions for Mr Smith? All right, Miss Heffernan. Good morning. May it please the court Patricia Heffernan on behalf of the United States. Um, I just wanted to step back and, uh, just, uh, focus on the fact that given that this claim is the sentencing error is before the court on ineffectiveness. Um, appellant does need to show a reasonable probability of a different outcome. I agree with Judge Wilkins that a lot of this argument sounds as if appellant is pushing for, per se, the court to find a part that per se, when, uh, that the district court has a guidelines calculation error, it's always going to be prejudicial, and that is not the standard, uh, under Strickland or under plain error. Um, when, uh, when the, uh, case like this is before the court on plain error, the prejudice inquiry is the same, and the burden is on appellant. And in this case, the district court... Just a moment. So you do concede that there was deficient performance? We did not. We did not push back against that. That's right. We're not arguing that... It's all about prejudice or not. Yes, that's, that's, um, uh, and we think that appellant cannot meet his burden of showing prejudice here, given the remarks that the district court made. This is just before we get into the weeds of the facts. Um, do you agree? It sounded like you were saying that you agree that the prejudice prong of Strickland is essentially the same as the plain error, um, prejudice analysis. Yes, I think the court has said that, um, in a case Williams at 358 Fed Third 956, um, and Williams is helpful in two respects. Um, there, um, at page 967, the court, um, uh, referring to its prior opinion in Cerro, uh, discussed or noted, um, Cerro's comment about the natural prejudice inquiries and also cited to United States in Hall, um, where, uh, the court embarked on the same prejudice analysis with respect to both plain error and ineffective assistance claim. So it's helpful in that respect, but it's also helpful in that the court there said that the burden remained squarely on a defendant to provide the court with a basis for suspecting that a reduction in his sentence is sufficiently likely to justify a demand. And here, appellant can't make that burden because of the remarks that the district court said when the district court in rejecting the argument that the statute, um, the statutory, um, term of supervised release could be as low as two years. The courts, the court said at, um, a 1 32 and appellants appendix that whether the five years is required or not, I do think it's I do think it's required, but regardless of whether it would be required or not, I would come out at six years anyway. And appellant hasn't addressed the fact that the court didn't just say I'd come out at six years. The court gave very compelling reasons for why six years was appropriate. He commented on the fact that the defendant had been acting as a pimp for five years every single day. There were three victims in this case. He was glorifying, uh, his this lifestyle. His criminal conduct was his lifestyle and his career. The court considered the comments that and the defendant's conduct as, uh, while while he was working as a pimp, um, the kinds of things he said over the Internet on Instagram, his advertising of these women and said that it didn't appear to the court that the defendant thought that there was really anything wrong with what he was doing. And even at the point of the sentencing hearing, the court remarked that the defendant was not showing remorse, and the court was extremely concerned about the defendant returning to this lifestyle after what it termed a very moderate term term. Just at a logically prior point, the district judge typically if the district judge, it's within his authority to depart from the guidelines. Yes, fully within his authority. But but the district court also has an obligation to show an awareness of departure and to explain a departure. Isn't that correct? That's correct. And here the district court didn't do that, right? That's right. And in fact, the district court noted on the record that neither party nor the pre sentence report included any grounds for guidelines range. Dude, I just want to make sure we're, we're here that this would be a variance, rather than a departure. And I don't I'm not trying to split hairs. I make sure I'm so so go ahead. Yes, no, nobody had had made that argument. But this case is not before the court with a risk on a preserved claim of guidelines error, then we would be in a different situation, perhaps. Here, I think that the standard of review is important, and it drives the court's inquiry. I think here, given everything the court had to say about why it felt that six years in particular was appropriate, that appellate cannot show a reasonable probability of a different sentence. I think this record makes clear that if this court were to send this case back, that it would be futile, because the court would simply say, for the reasons I've articulated at great length at the sentencing hearing, I acknowledge that the applicable advisory term of supervised release is five years, and I'm going to vary to six. Well, so tell me why you think it makes a difference the variance versus the departures, you know, listed in the sentencing guidelines. So I just wanted to, you know, I'm not, you know, this isn't a 5.0. It's been quite a while since I've had a departure case. So I can't spell it off the, the particular numbers of the provisions, but I'd so in variances are certainly looser, you know, we're not trying to fit a square peg in a square hole that's identified by the guidelines. It's certainly, it's simply that the district court has discretion to vary from the recommended term of supervised release. So here are two things that struck me, because at first when I was reading, I found your, your argument quite persuasive that, you know, the district judge says, like, I want six. And, you know, when he's being pushed, and it was a defense argument for going lower. And he says, you know, I, I, I'm not going there. But he also explicitly talked about it in terms of the range. And he says, this is not the worst. You know, and he said it warranted a low end of the guidelines. He talked about the defendant's criminal history as modest. And he and he rejected what the government was then pressing as, quote, already reflected in the guidelines range. So the notion that he would have had he understood the guideline to be five years, nonetheless, imposed six is to me that that really raises a substantial question. And the other thing that I thought, you know, in terms of this judge, he gave the two years imprisonment, even in the face of saying, you know, frankly, the guideline here is modest guideline, but he stuck to it. So you have, I think you have reason to believe that this is a judge, at least in this case, who is really taking the guideline and the lodestar character of the guideline, seriously, doesn't say I'm going upward for this reason. And he could on remand do that. But But, to me, those facts make me confident that that is not what this judge was doing in this sentencing, that he wasn't saying, I know, it's five years, or, you know, what, even if five years were the guideline range, I would think this person's conduct is more serious. That's the record does not support that narrative. See, that's interesting, Judge pillared, because I have a different slant. And that affirms what you said earlier. That is, we shouldn't speculate on what the trial judge did or didn't do. It seems to me that he thought, well, I'll give him a taste of prison. The two years, but what I'm really worried about is when he gets back out on the street, and starts, again, what he just describes himself as a cut above the average pimp, I think a pimp is the pimp period. And I think that's what but again, you think one thing, I think another for what the district judge did. But that's, I think the risk and in our trying to predict what this will do. Right. So I think we do need I agree, we would remand for resentencing. Can I I'd like to address just what you had to say with respect to the court's remarks, as I read the court's remarks, with respect to, I think the court had different things to say with respect to the term of incarceration. And the term of supervised release, I read the court's 24 months, and the court chose 22. And the court said that it was choosing 22. Because he didn't think that the court, that the defendant deserved the top. And it certainly also didn't deserve the bottom of the guideline range. And it explained that the appellant's criminal history wasn't totally too severe. I think he said it wasn't worse in the world. And the court also discussed the fact that, in some ways, the defendant here, the appellant here was not what one thinks of as the stereotypical pimp, there was no evidence that he was beating up these women, he said. And so I think that what the court was saying there was, this could have been worse. And so I'm not going to give him the top of the range with respect to I've got concerns about deterring him. And so I think it's important to pull apart those remarks, because I think the remarks that Your Honor was referring to, were really with respect to how much punishment the court thought appellant was warranted in this case, as opposed to the very different question of how much supervision is going to be required to make sure that his conduct is detoured and the public is protected. So I think those were two different discussions. And I don't think that the mitigating factors that the court referred to with respect to the term of incarceration, bleed over and confuse the court's very clear remarks, I think about what it thought the term of supervised release was warranted in this case. And so that's why when the court says, hey, if even if I could go down to two, or, or even if five isn't required, I still think six is the right number. And for the six compelling reasons that it lists on the same page of that transcript, which is a 132. So I think under those circumstances, this court cannot say that there's a reasonable probability that the district court would have lower sentence. And I did, I wanted to just push back on one argument appellant is making, which is this notion that, first of all, that we shouldn't muddle the inquiry, the burden remains on appellant. So, but when appellant argues that only where the district court has acknowledged the possibility of the correct guideline, can this, you know, can this court find no prejudice, which isn't the inquiry anyway, but I would point out that if the court is acknowledging the correct guideline, you wouldn't be reaching a harmlessness analysis, because you'd have a court that says, well, I recognize this might be the correct guideline. And I would still reach the same result. Well, then you'd have alternate sentences, one of which is correct and no error in the first place. But so I don't think that that's the proper legal framework to be viewing the prejudice lens through. I'm sorry, what's not the proper legal framework? I just missed the distinction you're making. Well, it's in appellant's reply brief, and I think I heard him argue here, only where the court has recognized the correct guideline, can the court find the error harmless? First of all, we're not here on a harmless error analysis. So I wanted to correct that. It's appellant's burden show, a reasonable probability of a different outcome. But in framing the appellants, that argument about prejudice and a prejudice inquiry, in that, that's really the factual scenario he's setting forth is a situation where there really is no error in the first place. This notion that if the district court acknowledged the correct guideline, then there might not be prejudice. Well, if the district court has acknowledged the correct guideline, then there really would be no error. And I- But what about Melina? I'm sorry. Go ahead. What about Melina Martinez, where the district court used the wrong guideline, and even though it used the wrong guideline, it ended up giving a sentence that was within the and the Supreme Court nonetheless found prejudice under Strickland and sent it back. Here, the district court used the wrong guideline and imposed a sentence that was outside of the it was within the statutory range. And the district court recognized that, that I guess the district court said that rejected an argument that it could go below what turned out to be the correct statutory range of five years. But, but, I mean, isn't this at least kind of as a reasonable probability of a different outcome as Melina Martinez? I don't think so, Your Honor. And here's why. In Martin and Melina Martinez, I'm going to just refer to it as Melina because I keep switching the names around. But it but in that case, the district court rejected the government's argument that Melina be sentenced at the top of the guideline range and imposed a sentence at the very bottom of the guideline range. And that gave rise to a reasonable inference that the district judge, it's reasonably probable the district judge intended to sentence Melina at the bottom of the guideline range, whatever the proper guideline range was. And so, and I think that's, you know, that's a fairly obvious inference. And what the court did in Melina was simply reject the Fifth Circuit's categorical rule that a defendant can never show a reasonable probability of a different outcome based on the error alone. That's all Melina stands for. Here, so Melina didn't, didn't attempt to cabin situations in which the courts can find that there's no reasonable probability of a different outcome. And Melina recognizes and all of the courts, Strickland and Plain Air prejudice inquiries recognize that the court looks to the totality of the circumstances. So it's not just here, given the standard of review, it's not just the fact of the error. But is there a reasonable probability that if this court sends it were to send this case back to the district judge, the district judge would impose a different sentence and the remarks that the judge made here make clear that there is no reasonable probability that it would have done that. But the district judge also here gave what he thought was a sentence near the bottom edge of the guidelines for supervised release, right? Correct. So why doesn't that augur as to some reasonable probability that if he knew that the guidelines was actually five years, that, you know, again, we don't know anything to a certainty, but why isn't there at least a reasonable probability that he would say, well, yeah, five years seems enough. Because the court said that six was the number it wanted, and that it would have imposed six, even if it could have, even if the bottom had been two. So we've got the court said, if I could go down to two, accepting appellant's argument, I'd still impose six. And so that's why we know that additional information informs us that the district judge thought that in order to deter this guy, which was an incredibly concerning thing for the district judge, given all the circumstances and facts of the offense conduct here, and the lack of remorse at sentencing, it felt that six years was what was going to be required, was the appropriate term of supervised release. Although Ms. Heffernan, also the district judge asked the prosecutor, he said, I haven't seen a case in which the supervised release term was this long. You know, what makes this a case in which such a lengthy period is warranted? So the district judge is also expressing some discomfort about what he sees as a pretty robust period, and he makes his peace with it. But I mean, I know you're in an awkward position here, because you're saying this is what the district judge meant, but also resisting a remand to this very district judge. And I guess part of the question is what's wrong with that? In the government's view, you know, it's important that the standards of review have meaning, and that the prejudice inquiry isn't eroded. But I would say what the district court was pushing back on was the government's recommendation of a 10-year period of supervised release, wasn't comfortable with that, didn't impose that. But I would just point out also, this is, the appellate pled guilty to one count of this violation, although he had been engaged in this conduct daily for five, maybe even 10 years. So the, you know, the district court is aware of that too, which is why it was concerned about deterrence. This is not a case where there was one transportation one time into the district. And so that, you know, that informs the district court's decision. And that's, that's why this defendant is very different from other defendants. And again, the inquiry here isn't, does the court have ultimate confidence about what the district court was thinking? The inquiry is, is there a reasonable probability if this court were to send the case back that there would be a different sentence imposed? And I think for all of the reasons and the facts of this case, and the remarks that the district court made, even if I could go down to two, I'd impose six, appellant can't meet that burden here. Counsel, suppose, you know, we were sympathetic to your argument, but we were also sympathetic to the argument made by appellant, that we can't have a scenario where the district court can say kind of, even if this, and even if that, I would still give you this sentence, because ultimately, then we're going to create a situation where the guidelines are meaningless. And, and, and having, you know, we need to enforce the Supreme Court's admonition that the district court is also, is always supposed to start with a correct guidelines calculation, and then go from there in determining what the sentence can be. And if we simply affirm here, the argument is, is that we're going to erode that kind of fundamental premise of sentencing. Why, why shouldn't we be concerned about that? And how could we write an opinion here that wouldn't do that? I think that that would be a concern if this case were before the court and preserved error, where the court was reviewing for harm. But here, the standard of review is that the appellant has to show a reasonable probability of a different outcome. And so the court, I don't think the court needs to address, I don't think the court is eroding the import of the guidelines, and the court doesn't need to address that and or accept that the inquiry is a specific and focused one. And it's whether it had the district court known the correct term of supervised release, is there a reasonable probability that it would have imposed a different sentence? And the record here, clearly, I think says that no, it wouldn't have imposed a different sentence, and that a remand would be futile because on remand, given all the court's remarks about the seriousness of this offense, the time it went on, the fact that this was his lifestyle and his career, all the court would say on remand on this record is, for the reasons that I stated at the prior sentencing hearing, I acknowledge now the guideline range, and I'm bearing to six years. So under the facts of this case, and the remarks the court made, appellant can't meet his burden of showing a reasonable probability of a different outcome. And that's really the court's analysis. And that's the would right, I think the court would start with the, you know, the starting point is, what is the burden? And can it be and hasn't been met here? And I think the answer to that is no. Well, it may be that we are, we might create a different type of remand and call it a ministerial remand, that is, for the district court to say, I was wrong, I made a error. It does not change my view. Your Honor, I think some circuits have done that. Right. I'm not aware whether the circuit has. In the government's view, I don't think we have. Well, I don't know. In the government's view, that would be a pointless remand. But, you know, I think it's certainly open to the court to do that if that's, I don't have any case law that says that the court isn't authorized to do that. Right. But we do think that here, for all the reasons I've said, I think several times, that appellant has not and cannot meet his burden here. All right. Mr. Smith, why don't you take two minutes for any response? Thank you, Your Honor. I guess two points that I'd like to focus on. One is, you know, the six-year sentence, and here are my non-guideline reasons for why I think the six-year sentence is appropriate. And they're arguing this shows he wouldn't have deviated from that, had he even known that the five years was all the guidelines allowed. But, you know, just because the court gave non-guideline reasons for the sentence it imposed, that doesn't mean it would have not taken seriously compelling guidelines-related reasons for giving a lesser sentence. I mean, the court knew as well as any of us that having the correct guideline range is the load star, the starting point for any sentence. So if he had known that five years was all the guidelines permitted, that would have given him a compelling reason for giving a sentence less than six years, a reason every bit as compelling as the reasons he picked, the non-guideline reasons he picked for giving a six-year sentence. So it really is an open question as to what he would do with sentencing if the case were put back before him and he were then advised that a five-year term of supervised release is all that the guidelines allow. And I have to show a reasonable probability that the outcome would have been different, but that's not, I mean, I don't even have to show that the attorney's deficient performance more likely than not resulted in the negative outcome. I've just got to show that it undermined confidence in the outcome. And I don't see how it can be said with any confidence here that if the court had been informed that the guidelines only allowed five years, he would have come down off that six-year sentence, the six-year term of supervised release again. And because of that, we have to remand the case to the district court, telling that the guidelines only allow five years, and then let him factor that new information, this new compelling reason into his calculus. I guess the final point I'd like to make, and it's sort of picking up on something Judge Wilkins had said, the government's position appears to be that this court sort of insulated itself from review on the guidelines because it gave non-guidelines related reasons for the sentence, the above guideline sentence that it imposed. Courts almost always give non-guideline related reasons for the sentences they impose. So in almost every single case, the government can make this argument, even in those cases where the judge, in every single case where the judge departs or unknowingly varies from the cases, when a judge unknowingly gives an above guideline sentence, there will always be evidence that the judge had non-guideline related reasons for the sentence he imposed. So if we allow the government's argument to stand that even when a judge unknowingly gives an above guideline sentence, that will be okay, just as long as he gives non-guidelines related reasons for that and that's where I think we are, and that's another reason I think we need to remand this case to the district court to have him look at it now being fully informed. Thank you. All right, no questions for Mr. Smith? All right, Mr. Smith, you were appointed by the court and you've done a really an outstanding job. These guidelines are complicated, it's like a appraisal. I'm going to say that I put you at the top of the list for representation in these cases, certainly, and Ms. Heffner, it is always a pleasure to see you. So thank you.
judges: Henderson, Pillard, Wilkins